UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

T.J., a minor, by and through her mother
And next friend TIQUA JOHNSON
    *Plaintiff,*

v.                                                        C.A. No. 1:20-cv-00243-WES-PAS

DARREN ROSE, alias, individually and in his
Official capacity as a Pawtucket Police Officer,
And LISA BENEDETTI RAMZI, alias,
Individually and in her official capacity as
Principal of Goff Junior High School, and
CITY OF PAWTUCKET, by and through its
Finance Director, Joanna L'Heureux
    *Defendants.*

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**I.**     **INTRODUCTION**

Plaintiff T.J. ("Plaintiff"), a former student at Lyman B. Goff Middle School in Pawtucket, Rhode Island, has filed a Complaint, arising out of her arrest for disorderly conduct after a physical altercation with another student, M.P., on June 3, 2019.  Her Complaint brings claims against Defendants Darren Rose ("Officer Rose"), a Pawtucket police officer; Lisa Benedetti Ramzi ("Ms. Ramzi"), the Principal at Goff at the time; and the City of Pawtucket ("City") (collectively "Defendants").  Against all Defendants, Plaintiff alleges unreasonable seizure in violation of the Fourth Amendment and the Rhode Island Constitution (Counts One and Two), violation of her equal protection rights under the Fourteenth Amendment and the Rhode Island Constitution (Counts Four and Five), violation of the Rhode Island Civil Rights Act ("RICRA") (Count Six), and state-law abuse of process (Count Seven).  She also alleges a warrantless misdemeanor arrest in violation of R.I. Gen. Laws § 12-7-3 (Count Three) against Officer Rose and the City.

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

Defendants now move for summary judgment as to all of Plaintiff's claims. First, Defendants submit that Plaintiff's claims constitute a collateral attack on a conviction and are therefore barred under the U.S. Supreme Court case of Heck v. Humphrey. Second, Plaintiff cannot sustain her equal protection claim because she cannot show that any similarly-situated students of another race were treated differently from her. Third, section 12-7-3 of the Rhode Island General Laws does not provide Plaintiff a civil cause of action, and Defendants nevertheless did not violate the statute because another state statute authorized Plaintiff's arrest. Fourth, Plaintiff's RICRA claim must fail because RICRA is inapplicable to the facts described in the Complaint. Finally, Plaintiff's claim for abuse of process fails because the criminal proceedings against her did not become warped to serve an ulterior purpose. For these reasons, Defendants respectfully ask that this Court grant their motion for summary judgment.

## II.   FACTS

Defendants adopt and incorporate by reference their Statement of Undisputed Facts offered, along with this Memorandum of Law, in support of their Motion for Summary Judgment.

## III.   ARGUMENT

### A.   *Standard of Review*

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is axiomatic that this Court must view the evidence in the light most favorable to the nonmoving party. Morrissey v. Boston Five Cents Sav. Bank, F.S.B., 54 F.3d 27, 31 (1st Cir. 1995). However, the nonmoving

party "may not rest upon the mere allegations or denials of [its] pleadings, but . . . must set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The primary purpose of summary judgment is to permit the court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required" on the claims being examined. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 793-94 (1st Cir. 1992). The mandates of Rule 56(c) require entry of summary judgment "upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, "[t]he moving party bears the initial burden of demonstrating a lack of a material issue of fact, which shifts the burden to the non-moving party, who then must show the trier of fact could rule in his favor with respect to each issue." Ferro v. R.I. DOT, 2 F. Supp. 3d 150, 156 (D.R.I. 2014) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)).

"A fact is 'material' if it potentially could affect the suit's outcome. An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-Iriszarry v. Corporacion Insular DeSeguros, 111 F.3d 184, 187 (1st Cir. 1997) (citations omitted). As recognized by this Court, "[a] genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Global Epoint, Inc. v. Gtech Corp., 58 F. Supp. 3d 178, 184 (D.R.I. 2014) (quoting Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009)) (internal citation and quotation marks omitted). But, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

allegations, improbable inferences, and unsupported speculation." Ferro, 2 F. Supp. 3d at 156 (citations omitted).

> B. *Heck v. Humphrey* bars Plaintiff's claims.

> i. **Heck applies to both diversion programs and juvenile proceedings.**

Plaintiff has brought claims under the Fourth and Fourteenth Amendments, both arising from her arrest for disorderly conduct. These claims, however, constitute a collateral attack on the disposition of her disorderly conduct charge, which is impermissible under the U.S. Supreme Court case of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). In Heck, the Supreme Court held that a convicted plaintiff could not sustain a malicious prosecution suit under § 1983 unless the underlying conviction or sentence had been invalidated. Specifically, the Court determined that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87 (footnote omitted) (emphasis in original). The First Circuit has suggested that Heck acts as a bar to the subject matter jurisdiction of the district court. See Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998).

At the outset, Heck applies to the disposition of Plaintiff's criminal proceeding, even though she was a juvenile and elected for an alternative process to the typical Family Court proceeding. Admittedly, she was not "convicted" in the ordinary sense of the word—she did not enter a traditional guilty plea, nor was she found guilty after standing trial. Nevertheless, she deemed herself "guilty" of disorderly conduct during her proceedings before the Juvenile Hearing Board, and she wrote an essay as a remedial measure thereafter. The fact that she did not receive

Page 4 of 18

a traditional conviction, therefore, is of no moment; the manner in which her disorderly conduct charge was disposed of was not "'consistent with the innocence of the accused,' a criterion generally required in order for a disposition to be considered a 'successful termination.'" Kennedy v. Town of Billerica, No. 10-11457-GAO, 2014 U.S. Dist. LEXIS 6442, at *4 (D. Mass. Sept. 30, 2014) (quoting Britton v. Maloney, 196 F.3d 24, 31 (1st Cir. 1999)).

In Kennedy, the plaintiff was arrested and subsequently entered a state court pretrial diversion program. Id. at *2. After he successfully completed the program, conditions of which included a probationary period, meetings with a probation officer, a requirement that he stay out of the town where he was arrested, and a curfew, his charges were dismissed. Id. He then brought a claim under § 1983 alleging that his arrest was unlawful. Id. at *1-2. At trial, the jury found in his favor as to that claim, and the defendant filed a motion for judgment as a matter of law, arguing that the disposition of the criminal charges under the diversion program barred the plaintiff's claim under Heck. Id. at *2. The court granted the defendant's motion, finding that the disposition was not consistent with the plaintiff's innocence because his "acceptance of pretrial diversion on terms of probation did not imply that his arrest had been made without probable cause." Id. at *5.

Although the First Circuit has not addressed Heck's applicability to diversion programs, several other Courts of Appeals have reached conclusions similar to Kennedy and found that Heck bars adjudications from such programs. See Gilles v. Davis, 427 F.3d 197, 211 (3d Cir. 2005) (§ 1983 claim barred under Heck because expungement of criminal record after completion of probationary term under Pennsylvania's Accelerated Rehabilitative Disposition Program did not terminate the plaintiff's disorderly conduct charge in his favor); Miles v. City of Hartford, 445 F. App'x 379, 382 (2d Cir. 2011) (quoting Roesch v. Otarola, 980 F.2d 850, 853 (2d Cir. 1992)) ("[A] dismissal pursuant to the Connecticut accelerated pretrial rehabilitation program is not a

termination in favor of the accused for purposes of a civil rights suit."). Furthermore, although the First Circuit has not addressed whether Heck bars civil challenges to juvenile adjudications, several other circuits have answered the question in the affirmative. See Adkins v. Johnson, 482 F. App'x 318, 319 (10th Cir. 2012); Gregory v. City of Newberg, 2015 U.S. Dist. LEXIS 126304 (D. Or. Sept. 21, 2015; Grande v. Keansburg Borough, 2013 U.S. Dist. LEXIS 83195, at *6 (D. N.J. June 13, 2013). Courts have even applied Heck in jurisdictions where, under state law, juvenile adjudications are not convictions. See Morris v. City of Detroit, 211 F. App'x 409, 411 (6th Cir. 2006) (juvenile adjudication, although not a criminal proceeding under Michigan law, "is certainly the functional equivalent" for Heck purposes); Dominguez v. Shaw, 2011 U.S. Dist. LEXIS 113076, at *7 (although "Arizona treats minors who have committed a crime differently than adults who have committed the same crime," court saw "no reason to treat juvenile adjudications differently than adult convictions for purposes of Heck analysis").

    **ii.**    **Heck bars all of Plaintiff's claims.**

Given that Heck is applicable, Plaintiff must show that her juvenile proceeding "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 587. Importantly, allowing Plaintiff's Fourth Amendment claim to proceed presents a risk of "two conflicting resolutions arising from the same underlying events." Kennedy, 2014 U.S. Dist. LEXIS 6442, at *5; see also Gilles, 427 F.3d at 209. In Gilles, which involved a First Amendment claim, "[the plaintiff's] underlying disorderly conduct charge and his § 1983 First Amendment claim require[d] answering the same question— whether [the plaintiff's] behavior constituted protected activity or disorderly conduct." Id. Had the plaintiff's § 1983 claim been allowed to proceed, success on that claim "would [have] result[ed]

in parallel litigation over whether [the plaintiff's] activity constituted disorderly conduct and could [have] result[ed] in a conflicting resolution arising from the same conduct." Id.  Similarly, a finding in Plaintiff's favor on her Fourth Amendment claim in the instant matter necessarily includes a finding that Defendants lacked probable cause to arrest her for disorderly conduct.  Such a finding would be directly at odds with Plaintiff's plea before the Juvenile Hearing Board, where she admitted that she was guilty—presumably beyond a reasonable doubt, a standard much higher than probable cause—of disorderly conduct.

Plaintiff's equal protection claim under the Fourteenth Amendment presents the same issue.  "[I]f a person can demonstrate that he was subjected to selective enforcement in violation of his Equal Protection rights, his conviction will be invalid."  Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police, 411 F.3d 427, 440-41 (3d Cir. 2005) (citing United States v. Berrigan, 482 F.2d 171, 174 (3d Cir. 1973)).  In Gibson, the Third Circuit noted that "a successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated [the plaintiff's] conviction," thereby implicating Heck.  Id. at 441.  The same is true in the instant matter—a finding in Plaintiff's favor on her equal protection claim would serve to invalidate the disposition of her criminal matter.

Plaintiff's state-law claims—violation of R.I. Gen. Laws § 12-7-3, violation of RICRA, and abuse of process—meet the same fate.  Although Heck's holding applies only to § 1983 claims, its principles are more broadly applicable.  Heck's purpose is to prevent collateral attacks on convictions "through the vehicle of a civil suit," 512 U.S. at 484, based on the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," id. at 486.  Guided by this principle, courts throughout the country, including within the First Circuit, have applied Heck to state-law claims that are inseparable from analogous

claims brought under § 1983.  See Price v. City of Bossier, 841 F. App'x 650, 654 (5th Cir. 2021) (dismissing, on Heck grounds, state-law tort claims that were inseparable from Heck-barred § 1983 excessive force claim); Yount v. City of Sacramento, 183 P.3d 471 (2008) (applying Heck to California state-law battery claim); Mangual v. City of Worcester, 285 F. Supp. 3d 465, 472 (D. Mass. 2018) (barring plaintiff's state-law claims to the extent that prevailing on those claims would undermine the validity of his conviction); Cabot v. Lewis, 241 F. Supp. 3d 239, 257 (D. Mass. 2017) (barring plaintiff's state-law tort claims under Heck after noting that Heck's reasoning "appears to apply with equal weight to state-law claims").  All three of Plaintiff's state-law claims in this matter implicate the same issues as her claims under § 1983.  Like her Fourth Amendment claim, her claim under R.I. Gen. Laws § 12-7-3 alleges that her arrest was unlawful, and success on that claim would thereby invalidate the subsequent disposition of her disorderly conduct charge. Similarly, her RICRA and abuse of process claims, like her equal protection claim, allege that Defendants unlawfully singled her out in arresting her; if proven, these claims would likewise invalidate her criminal disposition.  Heck, therefore, bars all of Plaintiff's claims, and those claims should be dismissed accordingly.

  C. *Plaintiff's equal protection claim also fails because she provides no putative comparators and because a similarly-situated student of a different race was treated identically.*

"The Equal Protection Clause prohibits selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  B & B Coastal Enters. v. Demers, 276 F. Supp. 2d 155, 171 (D. Me. 2003) (citation omitted).  Plaintiff effectively alleges disparate treatment—she seems to claim that she was arrested and charged with disorderly conduct in a situation where other students, of races different from hers, would not have been.  To set forth a disparate treatment claim, Plaintiff must show that she was subjected to differential treatment, as

compared with similarly situated persons, on the basis of a protected class. See Williams v. Pennridge Sch. Dist., Civ. A. No. 15-4163, 2016 U.S. Dist. LEXIS 150216, at *34-35 (E.D. Pa. Oct. 31, 2016). The essence of the claim is that state actors intentionally discriminated against Plaintiff because of her membership in a protected class. See Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013). Thus, the plaintiff "must identify [her] putative comparators to make out a threshold case of disparate treatment." Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 346 (D. Mass. 2016).

To establish a valid equal protection claim, Plaintiff must show that "(1) 'compared with others similarly situated, [she] was selectively treated' and (2) that such treatment was 'based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Perfect Puppy, Inc. v. City of East Providence, 98 F. Supp. 3d 408, 418 (D.R.I. 2015) (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)). The inquiry as to whether persons or groups are "similarly situated" is "not always susceptible to precise demarcation." Aponte-Ramos v. Álvarez-Rubio, 783 F.3d 905, 909 (1st Cir. 2015) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007)). However, the First Circuit has established that "the test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Aponte-Ramos, 783 F.3d at 909 (quoting Barrington Cove, 246 F.3d at 8). This test requires that the persons or groups "be similar 'in all relevant respects.'" Aponte-Ramos, 783 F.3d at 909 (quoting Barrington Cove, 246 F.3d at 8). While "exact correlation is neither likely nor necessary," the persons or groups "must be fair congeners." Aponte-Ramos, 783 F.3d at 909 (quoting Barrington Cove, 246 F.3d at 8).

In the instant matter, Plaintiff has not presented any similarly-situated persons at all, let alone any such persons who were treated differently from her. Nevertheless, there is a ready example of a similarly-situated person from these very events—M.P., the other student in the fight, who is Caucasian. After the fight, M.P.'s experience mirrored Plaintiff's almost identically. Like Plaintiff, she was arrested for disorderly conduct. She was also afforded the opportunity to appear before the Juvenile Hearing Board in lieu of the Family Court and elected to do so, appearing at a hearing on June 13, 2019. She filled out the same form admitting that she was guilty of disorderly conduct, and, like Plaintiff, was given a writing assignment by the Juvenile Hearing Board as a disposition. Therefore, the only similarly-situated person referenced anywhere in this case received the exact same treatment as Plaintiff, even though the two students are of different races. Since Plaintiff has failed to prove that she was selectively treated, her equal protection claim must fail.

      D.    *Plaintiff cannot sustain a claim under R.I. Gen. Laws § 12-7-3 because the statute does not provide for a civil cause of action and because R.I. Gen. Laws § 14-1-25 allows for warrantless arrests of juveniles.*

Plaintiff attempts to bring a claim under R.I. Gen. Laws § 12-7-3 against the City and Officer Rose, alleging that they violated the statute by arresting her on the spot without first obtaining a warrant. See Complaint, Docket at #1, at ¶ 71. At the outset, Defendants submit that this claim must fail because the statute, by its terms, does not provide for a civil cause of action. The statute reads as follows:

> A peace officer may, without a warrant, arrest a person if the officer has reasonable cause to believe that the person is committing or has committed a misdemeanor or a petty misdemeanor, and the officer has reasonable ground to believe that person cannot be arrested later or may cause injury to himself or herself or others or loss or damage to property unless immediately arrested.

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

R.I. Gen. Laws § 12-7-3.  "[A] statute that establishes rights not recognized by common law is subject to strict construction." Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996).  No right to be free from a warrantless arrest for a misdemeanor existed at common law.  Although the common law provides a cause of action for the tort of false arrest, that tort only addresses arrests made without probable cause.  See Winn v. Collins, 723 A.2d 798, 799 (R.I. 1998) ("An officer is not liable for making a warrantless arrest if probable cause to arrest exists at the time the arrest is made.").  Section 12-7-3, therefore, confers rights not recognized at common law, and must be strictly construed accordingly.

Notably, the language of section 12-7-3 is devoid of any provision permitting civil liability for violations of the statute.  The Rhode Island Supreme Court has "long held . . . that the creation of new causes of action is a legislative function." Bandoni v. State, 715 A.2d 580, 584 (R.I. 1998) (quoting Accent Store Design, Inc., 674 A.2d at 1226).  "When a statute does not plainly provide for a private cause of action [for damages], such a right cannot be inferred." Tarzia v. State, 44 A.3d 1245, 1258 (R.I. 2012) (quoting Stebbins v. Wells, 818 A.2d 711, 716 (R.I. 2003)).  "To inject a judicial remedy at this time into a statute that plainly does not contain a remedy, particularly when there is no evidence to suggest that the Legislature had intended to create a cause of action, 'would be interpretation by amendment.'" Bandoni, 715 A.2d at 585 (quoting Rhode Island Federation of Teachers, AFT, AFL-CIO v. Sundlun, 595 A.2d 799, 802 (R.I. 1991)).  In Count Three of her Complaint, Plaintiff seeks to inject a judicial remedy into R.I. Gen. Laws § 12-7-3 where none exists.  This Court should not permit her to do so.

Nevertheless, state law permitted Officer Rose to arrest Plaintiff without a warrant.  R.I. Gen. Laws § 14-1-25, entitled "Arrest of juveniles without a warrant," provides that "[a]ny officer authorized to make an arrest for any criminal offense may take into custody without a warrant any

child believed to be delinquent or wayward within that officer's jurisdiction." The statute defines "wayward" to include any child "[w]ho has, on any occasion, violated any of the laws of the state or of the United States or any of the ordinances of cities and towns, other than ordinances relating to the operation of motor vehicles." Id. § 14-1-3. Plaintiff certainly fits this definition—she was arrested for disorderly conduct in violation of R.I. Gen. Laws § 11-45-1, and she was within Officer Rose's jurisdiction. Officer Rose, therefore, was well within his authority to arrest her without a warrant under section 14-1-25.

The Rhode Island Supreme Court has repeatedly held that "statutes relating to the same subject matter should be considered together so that they will harmonize with each other and be consistent with their general objective scope." DePasquale v. Cwiek, 129 A.3d 72, 77 (R.I. 2016) (internal quotation marks omitted) (quoting South Cty. Post & Beam, Inc. v. McMahon, 116 A.3d 204, 215 (R.I. 2015)); see also Such v. State, 950 A.2d 1150, 1156 (R.I. 2008) (internal quotation marks omitted) (quoting Kells v. Town of Lincoln, 874 A.2d 204, 212 (R.I. 2005)) ("This Court's method of statutory construction involves a practice of construing and applying apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency."); Shelter Harbor Fire Dist. v. Vacca, 835 A.2d 446, 449 (R.I. 2003) (quoting Providence Elec. Co. v. Donatelli Bldg. Co., 356 A.2d 483, 486 (R.I. 1976)) ("[C]ourts should attempt to construe two statutes that are in apparent conflict so that, if at all reasonably possible, both statutes may stand and be operative."). "Such statutes are considered to be *in pari materia*, which stands for the simple proposition that 'statutes on the same subject . . . are, when enacted by the same jurisdiction, to be read in relation to each other.'" Such, 950 A.2d at 1156 (quoting Horn v. S. Union Co., 927 A.2d 292, 294 n.5 (R.I. 2007)). Sections 12-7-3 and 14-1-25 of the Rhode Island General Laws clearly concern the same subject matter—warrantless arrests. Defendants submit that these two

statutes may be harmonized such that section 12-7-3 governs misdemeanor arrests generally, while section 14-1-25 provides a specific carveout for warrantless arrests of juveniles.

For both of these reasons, this Court should dismiss Plaintiff's claim under R.I. Gen. Laws § 12-7-3.

    E.    *Plaintiff's RICRA claim also fails because RICRA is not applicable to this matter.*

    **i.    RICRA does not govern the relationship between a public school and its students.**

RICRA provides, in relevant part, as follows:

> All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property . . . .

R.I. Gen. Laws § 42-112-1(a). It defines "the right to 'make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property'" to include "the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships." Id. § 42-112-1(a).

RICRA does not apply to the events alleged in Plaintiff's Complaint. By its terms, the statute is limited to discrimination in situations involving contractual relationships. The Rhode Island Supreme Court has applied the statute even more narrowly, limiting it to instances of employment discrimination. See Horn v. S. Union Co. 927 A.2d 292, 294-95 (R.I. 2007) ("[RICRA was] enacted to provide protection against discrimination in employment . . . . RICRA expressly deal[s] with the subject of employment discrimination . . . ."); see also Ward v. City of Pawtucket, 639 A.2d 1379 (R.I. 1994) ("The Rhode Island Civil Rights Act provides broad

protection against all forms of discrimination in all phases of employment."). Although this Court has, on one occasion, expanded RICRA's scope beyond employment discrimination to a relationship between a student and an institution of higher education, it still recognized that RICRA applies only to situations involving some form of contractual relationship.  See Liu v. Striuli, 36 F. Supp. 2d 452, 479 (D.R.I. 1999) (citation omitted) (finding RICRA applicable in case of college professor's alleged sexual harassment of student based on recognition that "a student's relationship with an institution of higher education is contractual in nature").

The relationship between a public school and its students is not contractual.  See Higginbottom v. Keithley, 103 F. Supp. 2d 1075, 1080 (S.D. Ind. 1999) ("Ultimately, unlike the university setting where students pay tuition and generally operate as adults, the relationship between elementary students and a public school is not by its nature contractual."); T.L. v. Sherwood Charter Sch., No. 03:13-cv-01562-HZ, 2014 U.S. Dist. LEXIS 28818, at *37 (D. Or. Mar. 6, 2014) ("[A] contractual relationship is not found in the relationship between a public school and its students given the involuntary nature of attendance and the absence of consideration."); Denver Parents Ass'n v. Denver Bd. of Educ., 10 P.3d 662, 664-65 (Colo. App. 2000) (upholding dismissal of breach of contract claim for failure to state a claim based on finding "as a matter of law that no contractual relationship exists between a public school district and its students").  Neither is a relationship between an arrestee and an arresting police officer.  RICRA was not intended to apply to either of these relationships, an intent reflected in the statutory language set forth above.  Therefore, since Plaintiff implicates no contractual relationship in this matter, she cannot invoke RICRA, and her attempt to do so in her Complaint must fail.

    **ii.**    **The City, along with Officer Rose and Ms. Ramzi in their official capacities, is immune from suit under RICRA.**

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

Defendants submit that the City is entitled to sovereign immunity with respect to Plaintiff's RICRA claim, and that this immunity extends to Officer Rose and Ms. Ramzi to the extent that they are named as Defendants in their official capacities. "Historically, under the common law, the state, as well as a municipality, enjoyed sovereign immunity, which could be waived only by the state's deliberate and explicit waiver." Graff v. Motta, 695 A.2d 486, 489 (R.I. 1997) (citing Mulvaney v. Napolitano, 671 A.2d 312, 312 (R.I. 1995)). "In construing a waiver of immunity statute, it is presumed that the Legislature did not intend to deprive the state of any part of its sovereign power unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language." Andrade v. State, 448 A.2d 1293, 1295 (R.I. 1982) (citing Brown Univ. v. Granger, 36 A. 720 (R.I. 1897)). RICRA does not waive sovereign immunity by its express language. See R.I. Gen. Laws § 42-112-1 et seq.

The Rhode Island Superior Court has opined that RICRA waives sovereign immunity by implication. See Evans v. R.I. Dep't of Bus. Regulation, C.A. No. 01-1122, 2004 R.I. Super. LEXIS 153, at *6-7 (Aug. 20, 2004) ("[T]he Legislature sought to protect its constituents from discriminatory practices by all employers. One major employer in the State of Rhode Island is the State itself. By necessary implication, the State of Rhode Island, like any employer, is accountable to its employees for discriminatory conduct."). This Court, however, has found no such waiver under the statute. See Luceus v. Rhode Island, C.A. No. 15-489ML, 2016 U.S. Dist. LEXIS 182719, at *14-15 (D.R.I. Dec. 13, 2016), report and recommendation adopted, 2017 U.S. Dist. LEXIS 9021 (D.R.I. Jan. 23, 2017). In Luceus, this Court assessed whether the State had waived its Eleventh Amendment immunity under RICRA using a standard similar to the Rhode Island standard articulated above: "[A] state will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

leave no room for any other reasonable construction." Id. at *14 (internal quotation marks omitted) (quoting Bergemann v. State of R.I., 676 F. Supp. 2d 1, 5 (D.R.I. 2009)). Applying this standard to RICRA, the Court found no sufficient evidence in the statutory language that the State had waived its immunity. Id. The Court also determined that, in light of the "stringent standard" and the requirement that the waiver be "unequivocally expressed," no "affirmative expression of waiver and consent in . . . RICRA" was evident. Id. at *15.

Defendants maintain that the same is true with respect to the sovereign immunity available to municipalities at common law. RICRA does not waive this immunity, either expressly or by implication. As such, Plaintiff's claim under the statute should be dismissed.

F. *Plaintiff does not have a viable claim for abuse of process because the criminal process employed by Defendants simply achieved its intended purpose.*

Plaintiff also alleges a claim for abuse of process. To establish such a claim under Rhode Island law, a plaintiff must show "(1) that the defendant instituted proceedings or process against the plaintiff and (2) that the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." Fiorenzano v. Lima, 982 A.2d 585, 590 (R.I. 2009) (quoting Palazzo v. Alves, 944 A.2d 144, 154 (R.I. 2008)). In other words, the plaintiff must show that "a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed." Id. (quoting Hillside Assocs. v. Stravato, 642 A.2d 664, 667 (R.I. 1994)). The wrongful purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002).

Plaintiff's claim for abuse of process in the instant matter is rooted in her allegation that Defendants arrested her "for the purpose of making 'an example' of her." See Complaint, ECF

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

No. 1, at ¶ 75.  She maintains that Officer Rose told her this upon informing her that she would be arrested.  Id. at ¶ 33.[1]  To the extent that Officer Rose did, in fact, say this, and to the extent that he actually intended to "make an example" out of Plaintiff by arresting her, "even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created."  Butera, 798 A.2d at 354.  In this case, Plaintiff's arrest accomplished its intended result.  Her case proceeded to the Juvenile Hearing Board, where she deemed herself guilty of disorderly conduct and wrote an essay explaining the lesson she learned from this incident.  None of the Defendants used this process as a threat against Plaintiff, and none of them gained any collateral advantage from it.  As such, Plaintiff cannot sustain her claim for abuse of process, and summary judgment on that claim should enter in Defendants' favor.

**IV.   CONCLUSION**

For the reasons stated herein, Defendants respectfully request that this Court grant their Motion for Summary Judgment.

Defendants,
By their Attorneys,

*/s/ Rebecca T. Partington*
Rebecca T. Partington, Esq. (#3890)

*/s/ Ryan D. Stys*
Ryan D. Stys, Esq. (#8094)
DeSisto Law LLC
60 Ship Street
Providence, RI 02903
(401) 272-4442
rebecca@desistolaw.com
ryan@desistolaw.com

---

[1] For purposes of summary judgment only, Defendants concede that Officer Rose made this statement.

*T.J./Johnson v. Pawtucket*
*C.A. No. 1:20-cv-00243-WES-PAS*

## CERTIFICATION OF SERVICE

I hereby certify, that on this 27th day of December 2021, I electronically served this document through the electronic filing system upon the following parties:

| | |
|---|---|
| Shannah Kurland, Esq. | Lynette Labinger, Esq. |
| Skurland.esq@gmail.com | ll@labingerlaw.com |

/s/ Ryan D. Stys