```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
                                   )
T.J, a minor, by and through her   )
mother and next friend,            )
TIQUA JOHNSON                      )
                                   )
          Plaintiff,               )
                                   )
     v.                            )   C.A. No. 20-243 WES
                                   )
DARREN ROSE,                       )
LISA BENEDETTI RAMZI, and          )
the CITY of PAWTUCKET              )
                                   )
          Defendants.              )
_____)
```

## MEMORANDUM AND ORDER

This case arises from a schoolyard altercation between two then-thirteen-year-old girls, one Black, one white. Afterward, Plaintiff T.J., who is Black, was arrested, handcuffed, taken away from the school in the back of a police car. She contends that, among other things,[1] this arrest violated her rights to be free from unreasonable seizure and her rights to the equal protection of the laws, under both state and federal constitutions. For the

---

[1] Along with her constitutional claims, T.J. alleges Defendants violated the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 (Count VI), and committed state law abuse of process (Count VII). Against only the city and Defendant Rose, she asserts her warrantless arrest for a misdemeanor violates R.I. Gen. Laws § 12-7-3. Because she has elected not to press her claims under the Rhode Island Civil Rights Act, see Pl.'s Mem. Supp. Pl.'s Obj. Mot. Summ. J. 30-32, ECF No. 22-1, Count VI is DISMISSED as withdrawn.

reasons below, Defendants' Motion for Summary Judgment, ECF No. 14, is GRANTED in part and DENIED in part. Plaintiff's Motion to Defer Ruling and for Additional Discovery Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, ECF No. 22, is GRANTED.

I. BACKGROUND

A dispute that began on social media came to blows in the schoolyard on the morning of June 3, 2019. Def.s' Statement Undisputed Facts ("DSUF") ¶¶ 4-7, ECF No. 15.[2] The fight lasted less than a minute. Pl.'s Suppl. Statement Undisputed Facts ("PSSUF") ¶ 42, ECF No. 24. After the altercation, T.J. was escorted to the guidance office, the nurse's station, and then back to the guidance office to await the arrival of her mother and the imposition of discipline. Id. ¶ 31. When her mother arrived and after some discussion with the principal, the school resource officer, Defendant Darren Rose, decided to arrest her for disorderly conduct. Id. ¶ 33; DSUF ¶ 11. T.J. was quiet and compliant after the fight. PSSUF ¶¶ 30-32.

When her mother asked to take custody of her daughter so that she could transport her to the station instead, Defendant Rose stated repeatedly that he needed to "make an example" of her. Id. ¶¶ 33, 37. He insisted that talking to students instead of

---

[2] The parties note many of these facts are undisputed for the purposes of this motion only. See, e.g., Def.s' Resp. Pl.'s Statement Undisputed Facts ¶ 30-31, 34-35, 37-43, 45-47, ECF No. 29; Pl.'s Statement Disputed Facts, ¶¶ 12-14, ECF No. 23.

arresting them "doesn't work." Id. ¶ 35. He then called for backup, and two other officers escorted T.J. through the halls of her school, handcuffed her at the door of the police car, and transported her to the station. Id. ¶¶ 39-40.

In consultation with her mother, T.J. eventually participated in a mediation with the other child and "waived out" of the family court by submitting to a disposition by the Pawtucket Juvenile Hearing Board. DSUF ¶¶ 16-17. The waiver she signed included the affirmation that: "I am guilty of the above charge(s) as reported by the Pawtucket Police Department." Id. ¶ 18. The ultimate discipline imposed was for her to write an essay on the effects of social media. Id. ¶21. The other girl in the fight, who was also arrested, similarly waived out of family court on charges of disorderly conduct. Id. ¶¶ 10, 22, 26. She was disciplined by being required to write a letter of apology to her parents. Id. ¶ 27

## II. LEGAL STANDARD

To succeed at summary judgment, Defendants must show that "there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views "the facts in the light most favorable to the nonmoving part[y]." Pippin v. Blvd. Motel Corp., 835 F.3d 180, 181 (1st Cir. 2016) (quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 157-58 (1st Cir. 2016)).

III. DISCUSSION

    A.   Operation of the Heck Bar

Defendants first argue that all T.J.'s claims are barred by the rule announced in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), and therefore must be dismissed. Defs.' Mem. Supp. Summ. J. ("Defs.' SJ Mem.") 2, 4-8, ECF No. 14-1. In Heck, the Supreme Court held that a plaintiff could not sue under 42 U.S.C. § 1983, if the facts underlying the civil claim would necessarily call into question a related and still-valid criminal conviction. Id.; Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006). The decision rests on the long-standing idea that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, 512 U.S. at 486.

        1. Excessive Force

Even assuming Heck applies to informal adjudications before the Juvenile Hearing Board, the rule does not sweep as broadly as Defendants suggest. If the civil rights claim and the criminal (or juvenile) charge rest on distinct facts, a successful civil suit does not necessarily undermine the integrity of the conviction. See Price v. City of Bossier, 841 F. App'x 650, 654 (5th Cir. 2021) ("[I]f the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim, the claim is not barred by Heck."(internal quotation omitted)); Thore, 466 F.3d at 180 (Heck bar applies only where

4

"[t]he excessive force claim and the conviction [are] so interrelated factually as to bar the § 1983 claim").

Here, there is no factual inconsistency between Plaintiff being guilty of disorderly conduct and her claim that officers used unreasonable or excessive force in arresting her nearly an hour later. As Plaintiff effectively argues, her excessive force claim "attacks the reasonableness of how the seizure was conducted, given the totality of the circumstances; not whether or not there was probable cause for the arrest or prosecution." Pl.'s Mem. Supp. Obj. Mot. Summ. J. ("Pl.'s Obj.") 6, ECF No. 22-1.

2. Equal Protection

Whether T.J.'s equal protection claim is barred by Heck is a thornier question. "Racially selective law enforcement violates this nation's constitutional values at the most fundamental level; indeed, unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendment." Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1167 (10th Cir. 2003). Thus, while often difficult to prove, a successful claim of racially motivated prosecution requires dismissal of the criminal charge. See In re Aiken County, 725 F.3d 255, 264 n. 7 (D.C.Cir. 2013) ("If the Executive selectively prosecutes based on impermissible considerations, the equal protection remedy is to dismiss the prosecution"); see also

5

United States v. Mumphrey, 193 F. Supp. 3d 1040, 1055 n.9 (N.D. Cal. 2016).[3]

When the racially biased decision is made not by the prosecutor but by another law enforcement officer, the question of whether dismissal is required is not strictly settled. See Mumphrey, 193 F. Supp. 3d at 1055 (treating the question of remedy for selective enforcement, as opposed to selective prosecution, as a question of first impression). That said, the strong weight of authority suggests that a successful selective enforcement claim also requires dismissal. See id. 1055-59 (surveying cases, following the Seventh and Tenth Circuits in holding that a selective enforcement claim requires dismissal); see also Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)(requiring discharge of imprisoned petitioners where "public authorities charged with [ordinance] administration," who were not prosecutors, applied the law "with an evil eye and an unequal hand"). In general, this Court agrees that:

---

[3] The Supreme Court technically left the question of proper remedy for selective prosecution open. See United States v. Armstrong, 517 U.S. 456, 461 n.2 (1996). Even so, it appears widely accepted that dismissal is the proper recourse. See United States v. Lewis, 517 F.3d 20, 22 (1st Cir. 2008) (resolving discovery dispute related to defendant's motion to dismiss on the grounds of selective prosecution); 45 A.L.R. Fed. 732 (Originally published in 1979) ("Discriminatory prosecution or enforcement of the laws is now generally recognized to constitute a valid defense to a criminal charge.")

> It is difficult to discern why selective prosecution warrants dismissal, but selective enforcement (upon which prosecution is necessarily predicated) would not. Racially selective action by law enforcement inflicts harm whether it is perpetrated by law enforcement in the streets or by a prosecutor in an office—both inflict substantial injury on the victim and society: in addition to violating the victim's rights to equality and liberty, such discriminatory conduct impugns the integrity of the criminal justice system and compromises public confidence therein.

Mumphrey, 193 F. Supp. 3d at 1055.

Because a prosecution is invalid when it "is necessarily predicated" on a racially discriminatory decision, whether by law enforcement or a prosecutor, many courts have applied the Heck-bar to equal protection claims under § 1983 when the resulting conviction still stands. See Sams v. Cnty. of Riverside, No. EDCV171848SVWSS, 2019 WL 3069180, at *10 (C.D. Cal. June 14, 2019), report and recommendation adopted, No. EDCV171848SVWSS, 2019 WL 3067590 (C.D. Cal. July 10, 2019)(collecting cases); see also Fairbanks v. O'Hagan, 255 F. Supp. 3d 239, 245-46 (D. Mass. 2017) (because a "conviction derived from an officer's selective enforcement of laws in violation of a defendant's Equal Protection rights is invalid," a successful equal protection claim will "necessarily imply the invalidity" of that conviction and is barred by Heck); Cano-Diaz v. City of Leeds, Ala., 882 F. Supp. 2d 1280, 1290 (N.D. Ala. 2012) ("[I]f Cano–Diaz proved that the City of Leeds officer who pulled her over did so for purely discriminatory motives based on her race or ethnicity, such proof of the

7

illegality of the stop would invalidate any convictions resulting therefrom.")

The difficulty of this case is that T.J.'s disorderly conduct disposition is neither derived from nor necessarily predicated on the action she challenges as racially biased – the decision to conduct a formal arrest. Mindful that "[a] plaintiff is the master of [her] own complaint," the Court "must examine what [Plaintiff] is asking for, before [it] can decide . . . if the Heck line of cases stands in [her] way." Mordi v. Zeigler, 870 F.3d 703, 707 (7th Cir. 2017).

T.J. does not contend that she was prosecuted because of her race, or that the arrest and prosecution were without probable cause that she was disorderly - either of which would challenge her conviction. Pl.'s Obj. 6. And none of the evidence that supported the disposition of her disorderly charge – her own signed affirmance of guilt and a video of the fight— were in anyway derived from or dependent upon the arrest itself. See, e.g., Cano-Diaz, 882 F. Supp. 2d at 1291 (challenging racial bias in traffic stop which led directly to criminal charges); Mumphrey, 193 F. Supp. 3d at 1042-43 (officers alleged to have targeted individuals for controlled buys based on race). Rather, she appears to claim an equal protection violation in Officer Rose's insistence on conducting a warrantless arrest for a misdemeanor at her at school with handcuffs, instead of relinquishing her to her mother's care

8

and custody to face that charge via summons. Pl.'s Obj. 29-30. That decision stands outside the chain of causation that led to her prosecution.

In this way, T.J.'s case is distinguishable from the mine run of selective enforcement claims in which a prosecution flows directly from a discriminatory exercise of discretion by law enforcement. It is not clear from the cases cited by the parties, nor those discovered by the Court, whether she would have a valid selective enforcement defense, where the selection (for arrest) is causally severed from the enforcement of the law (which could have been conducted by summons). Thus, the Court concludes that because a successful equal protection would not necessarily imply the invalidity of her disposition before the Juvenile Hearing Board, this claim is not Heck-barred.

B. Officer Rose's Role

In their reply, Defendants point out that Officer Rose did not himself handcuff or escort T.J. to the police station, but rather called non-party Officers Vasatka and Day to do so. Defendants argue that Officers Rose and Principal Benedetti Ramzi cannot be liable on a claim of excessive force or unreasonable seizure, because they did not actually perform the arrest and handcuffing. See Def.s' Reply 2, ECF No. 28.

Because § 1983 does not permit vicarious liability, a plaintiff must show that "each Government-official defendant,

9

through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). This principal is most often invoked to bar supervisory liability under § 1983 on a theory of respondeat superior, and serves to ensure government officials are only liable for their own unconstitutional acts or omissions. See Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016).

Here, the Court need not parse whether Officer Rose was technically in a supervisory role over Officers Vasatka and Day, or merely their peer requesting assistance, because liability turns on "his own acts or omissions" in any event. Id. Specifically, there is no question that the ultimate decision to arrest T.J. instead of releasing her to her mother's custody belonged to Officer Rose. See Def. Rose Ans. Interrog. 8("[The arrest] was ultimately my decision"); Def. Benedetti-Ramzi Ans. Interrog. No. 9 ("Ultimately it was Officer Rose's decision to arrest."). The Court finds that Officer Rose played a sufficiently causal role in the alleged constitutional violation to be potentially liable – even if he did not fasten the handcuffs himself.

The same cannot be said for Principal Benedetti Ramzi, who lacked the authority to either order or prevent T.J.'s arrest. As Defendant Rose correctly insisted, that decision rested with him

10

alone. Therefore, all counts against Principal Benedetti Ramizi must be and are, DISMISSED.

C. Warrantless Arrest Statute

Next, T.J. claims her arrest violates the protections of R.I. Gen. Laws. § 12-7-3[4] because Officer Rose had no reason to believe she could not be arrested later, would hurt herself or others, or damage property. Defendants respond that there is no private right of action authorized by this statutory provision, that there was a right to arrest for misdemeanors at common law, and that a more specific statute for juveniles gave authority for Officer Rose to arrest T.J. Def.s' SJ Mem. 10-13. Because the Court agrees with the last argument, it need not address whether R.I. Gen. Laws. § 12-7-3 contains an implied right of action or the scope of an officer's arrest powers at common law. Rather, R.I. Gen. Laws § 14-1-25 provides:

> Any officer authorized to make an arrest for any criminal offense may take into custody without a warrant any child believed to be delinquent or wayward within that officer's jurisdiction, but in no case shall a child be detained in custody longer than twenty-four (24) hours without being referred to the family court for consideration.

---

[4] Rhode Island Gen. Laws § 12-7-3 provides:
> A peace officer may, without a warrant, arrest a person if the officer has reasonable cause to believe that the person is committing or has committed a misdemeanor or a petty misdemeanor, and the officer has reasonable ground to believe that person cannot be arrested later or may cause injury to himself or herself or others or loss or damage to property unless immediately arrested.

While this Court is aware of no Rhode Island case interpreting this statute, on its face it does not distinguish between misdemeanors and felonies in the arrest powers granted to police officers over children. While there is a separate and hotly debated question of whether T.J.'s arrest under the specific circumstances of this case violated constitutional protections, the arrest was not without statutory authority. Any apparent conflict between the general arrest statute (§ 12-7-3) and the more specific arrest statute for juveniles (§ 14-1-25) is resolved by the interpretive principle under which the specific governs the general. See United States v. Lara, 181 F.3d 183, 198 (1st Cir. 1999) ("Courts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones."). As a result, Count III, must be DISMISSED.

D. Abuse of Process

The Rhode Island Supreme Court has made clear that "abuse of process causes of action are disfavored." Fiorenzano v. Lima, 982 A.2d 585, 590 n.9 (R.I. 2009). To succeed on such a claim, "a plaintiff must prove: (1) that the defendant instituted proceedings or process against the plaintiff and (2) that the defendant used these proceedings for an ulterior or wrongful

purpose that the proceedings were not designed to accomplish." Id. at 590.

An improper purpose generally means "a form of coercion to obtain a collateral advantage" which turns the proceeding into "a form of extortion." Id. (quoting W. Page Keeton, et al., Prosser & Keeton on the Law of Torts § 121 at 898 (5th ed. 1984)). Neither "a pure spite motive," Butera v. Boucher, 798 A.2d 340, 354 (R.I. 2002), nor an action taken principally to "harass and annoy," Lima, 982 A.2d at 590, are sufficient, if the purpose of the proceeding is otherwise valid. See also Restatement (Second) of Torts § 682 (1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose. . . . Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm.")

For this reason, while Officer Rose's desire to "make an example" of T.J. may have been misguided or even cruel, it was not an improper purpose within the meaning of the tort. Summary judgment for Defendants as to Count VII is therefore GRANTED.

E. Additional Discovery Under Rule 56(d)

Finally, Plaintiff has moved under Rule 56(d) of the Federal Rules of Civil Procedure for further discovery to support her equal protection claim. Specifically, she asserts that defendants have

13

refused to provide details about other students who have been disciplined after fighting, making it impossible for her to properly develop comparators. Defendants assert this information is not relevant because the claim is Heck-barred and there is already one cross-racial comparator available: the other girl in the fight.

The requirements for additional discovery under Rule 56(d) are well-established and not in dispute:

> In order to gain the benefit of Rule 56(d), the party opposing summary judgment must make a sufficient proffer: the proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment. If the reason the party cannot adduce the facts essential to opposing summary judgment is incomplete discovery, the party's explanation (i.e., the third requirement) should: (i) show good cause for the failure to have discovered the facts sooner; (ii) set forth a plausible basis for believing that specific facts ... probably exist; and (iii) indicate how the emergent facts ... will influence the outcome of the pending summary judgment motion. Thus, in a case involving incomplete discovery, the Rule 56(d) proffer requirements can be categorized as: authoritativeness, timeliness, good cause, utility, and materiality. [T]hese requirements are not inflexible and.... one or more of the requirements may be relaxed, or even excused, to address the exigencies of a given case.

In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143-44 (1st Cir. 2014) (internal citations and quotations omitted). It is undisputed that Plaintiff's proffer is timely and authoritative. She has also shown good cause for being unable to adduce the facts sooner, as Defendants have insisted that the Heck bar made

14

discovery of information about other possible comparators irrelevant. Def.s' Reply 5-6. Because, as described supra, the Heck bar is not applicable here, that argument fails.

In support of her claim that the information sought probably exists and would influence a subsequent summary judgment motion on her equal protection claim, Plaintiff points to statistics obtained via public records request which show stark racial disparities in arrests at T.J.'s school. For example, in the 2017-18 school year, 57 percent of students arrested at T.J.'s school were black girls, while all black students made up just 15 percent of the student population. See Kurland Aff. ¶ 13. The next year, black students again made up more than 50 percent of arrests at school, despite being only 10 percent of students suspended. Id. ¶¶ 14-15. These numbers are concerning and support a finding that information which is useful and material probably exists.[5] Therefore, Plaintiff has met the standard necessary to receive additional discovery under Rule 56(d), and her Motion is GRANTED. However, the Court orders that this discovery shall not commence until after the parties have a conference with the Court to discuss

---

[5] For the same reason, Defendants' argument that they have already offered one comparator, the other child in the fight, also fails. While the purportedly equal treatment in this fight obviously is helpful to Defendants, T.J. is entitled to look for comparators beyond the underlying incident in this case.

15

its scope, its timing, and the role qualified immunity may yet play in this case.

IV.  CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment is GRANTED as to COUNTS III, V, and VI, and as to Defendant Bendetti Ramzi for all counts.  In all other respects, Defendant's Motion is DENIED.  Plaintiff's Motion for Additional Rule 56(d) Discovery is GRANTED.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
District Judge
Date:  July 14, 2022